BOBBY LEE MCLEAN,              )
                               )
            Petitioner,        )
                               )
        v.                     )        1:08CV87
                               )
THEODIS BECK,                  )
                               )
            Respondent.        )


## MEMORANDUM OPINION AND ORDER

**Eliason, Magistrate Judge**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 2.) On December 31, 2001, Petitioner pled guilty in the Superior Court of Guilford County to larceny, having the status of a habitual felon, obtaining property by false pretenses, second-degree murder, four counts of first-degree kidnaping, three counts of robbery with a dangerous weapon, three counts of assault with a deadly weapon with intent to kill inflicting serious injury, and first-degree burglary in cases 00 CRS 111210, 01 CRS 85792, 01 CRS 087062, 01 CRS 023057, and 01 CRS 23681-691. His plea agreement was that he would be sentenced to 15 to 18 months of imprisonment on the false pretenses charge, that all other charges would be consolidated for judgment, that he would testify consistent with a previous proffer regarding the events of June 2 and 3, 2001, and that he would be sentenced on the second-degree murder charge to a minimum sentence of between 169 and 282 months. The longer

sentence for murder was to be concurrent to the shorter sentence for false pretenses. In a judgment consolidating all of the charges except the false pretense one and entered on September 30, 2003, Petitioner was sentenced to a minimum sentence of 267 months and a maximum sentence of 330 months of imprisonment.

On February 13, 2004, Petitioner filed a motion for appropriate relief in the state trial court. This was denied on March 3, 2004. On August 27, 2007, Petitioner filed a petition for a writ of certiorari with the North Carolina Court of Appeals.[1] This was denied on September 10, 2007. Finally, Petitioner submitted his petition to this Court in January of 2008. In it he raises a single claim of ineffective assistance of counsel which alleges that his attorney took advantage of the fact that Petitioner was taking medication for hallucinations and a sleep disorder to convince him to plead guilty. He also complains that the attorney used his family and friends to persuade him to accept the plea offer, that his attorney did not inform him of all of the elements of second-degree murder, and that the judge accepting his plea and the District Attorney were aware that he was taking the medication Doxepin. Respondent has now filed a summary judgment motion seeking to have the claim denied. (Docket No. 5.)

---

[1]It would appear that Petitioner's long delay in seeking certiorari following the denial of his motion for appropriate relief would have caused his time to file under 28 U.S.C. § 2244(d) to expire. See McConnell v. Beck, 427 F. Supp. 2d 578, 582 (M.D.N.C. 2006). However, Respondent has addressed the petition on its merits, rather than raise this point. Because the petition is clearly without merit, the Court need not dismiss on statute of limitations grounds.

Petitioner has responded (Docket No. 9) and the motion is now before the Court for a ruling.

## Applicable Standards of Review

If the Court finds that Petitioner's claims were adjudicated by the state courts on their merits, it must then apply 28 U.S.C. § 2254(d)'s highly deferential standard of review to Petitioner's claims. That statute states that habeas relief cannot be granted in cases where a state court has considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as set out by the United States Supreme Court or the state court decision was based on an unreasonable determination of the facts. A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362 (2000). A state decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 405-406. "Unreasonable" is not the same as "incorrect" or "erroneous" and the reasonableness of the state court's decision must be judged from an objective, rather than subjective, standpoint. Id. at 409-411. A holding is not reasonable simply because precedent written

-3-

by one of the Nation's jurists agrees with it.  <u>Id.</u> at 410.  As for questions of fact, state court findings of fact are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Here, Petitioner did raise the substance of his claims in his motion for appropriate relief.  That motion was denied on the merits.  The Court will give that denial the deference required by AEDPA.

## Discussion

As already set out, Petitioner's claim is one of ineffective assistance of counsel.  An ineffective assistance of counsel claim is evaluated by using a two-part test:

> In order to establish an ineffective assistance of counsel claim . . . [a petitioner is] required to establish that his "counsel's representation fell below an objective standard of reasonableness," measured by the "prevailing professional norms," [<u>citing</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)], and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," <u>id.</u> at 694, 104 S.Ct. 2052. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." <u>Id.</u> at 687, 104 S.Ct. 2052.
>
> In determining whether counsel's performance was deficient, "[i]t is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." <u>Id.</u> at 689, 104 S.Ct. 2052.  Hence, "court[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action might be considered sound trial strategy." <u>Id.</u> (internal quotation marks omitted).

-4-

Similarly, in evaluating whether the defendant has shown actual prejudice from any such deficient performance, it is insufficient for the defendant "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." Id. at 693, 104 S.Ct. 2052. Rather, a "reasonable probability" that the result would have been different requires "a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. When challenging a conviction, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695, 104 S.Ct. 2052. And, "[w]hen a defendant challenges a death sentence . . . ., the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Id.

Fisher v. Lee, 215 F.3d 438, 446-447 (4th Cir. 2000).

In the case of a guilty plea, a petitioner may also have to explain why, without counsel's alleged shortcomings, he or she would have pled not guilty and insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 60 (1985).

Petitioner faults his attorney's performance in three main areas. First, he claims that his attorney allowed him to plead guilty despite the fact that he was taking medications to help with a sleep disorder and hallucinations. Petitioner has only minimally supported the facts behind this claim with evidence. He has provided a copy of a psychiatric assessment performed on October 21, 2001, while he was incarcerated awaiting trial. (Docket No. 9, Ex. A-A.) That assessment states that Petitioner was suffering from severe depression, sadness, gloominess, jitteriness, and sleeplessness. It also added that he was "experiencing voices at night, coming through the wall that have been upsetting and anxiety

-5-

provoking." (Id.) However, it never states that he was hallucinating, as opposed to merely hearing the voices of other prisoners through the wall. At best, the language is unclear. Further, other parts of the report state that Petitioner was depressed, but oriented as to time, place, person, and situation and that he was not actively psychotic. It also adds that his short-term and recent memory was good and that his speech was coherent and appropriate. He was diagnosed with depressive disorder, adjustment disorder, and alcohol and crack cocaine dependence. Petitioner was prescribed Doxepin and Stellazine. (Id.)

Overall, the report shows that Petitioner suffered from depression, sleeplessness, and substance addiction. It does not state that he is not competent to decide to stand trial or enter a guilty plea and does not describe symptoms that would have caused his attorney to have questioned his competence to make that decision. In fact, it states that he was able to communicate and that he was oriented as to time, place, person, and situation. It also reflects that, more than two months prior to pleading guilty, Petitioner was put on medications to alleviate whatever problems he was having. Nothing in the record indicates that the medications did not work or that Petitioner's condition had somehow worsened before the time of his guilty plea. The report does not support a conclusion that Petitioner experienced any mental difficulties that would have rendered him incompetent to plead guilty.

-6-

Petitioner also tries to make an argument that the medications prescribed to him may have rendered him incompetent. There is again no evidence beyond his conclusory statements to support this allegation. One of Petitioner's own exhibits shows that insomnia, confusion, disorientation, disturbed concentration, delusions, and hallucinations are possible side effects of a class of antidepressants that appears to include, or at least be similar to, Doxepin. However, it also specifically states that some of those side effects have not been reported with Doxepin. (Id., Ex. B-B.) More importantly, Petitioner stated under oath to the judge accepting his guilty plea that he was taking Doxepin as a sleeping medication, but that it did not interfere with his ability to think. (Id., Ex. 3.) The overall transcript from his change of plea hearing supports this by revealing that Petitioner appeared to easily understand the judge's questions and give appropriate responses. Among those responses, Petitioner stated that he was pleading guilty of his own free will and that he fully and completely understood what he was doing. (Docket No. 6., Ex. 8 at 16.) Sworn statements made during a guilty plea cannot be disregarded absent clear and convincing evidence that they were not true. Little v. Allsbrook, 731 F.2d 238, 239 n.2 (4th Cir. 1984). No such evidence is present here. In fact, the record actually supports the statements made during the change of plea. The trial judge, after inquiring about Petitioner's medications, found Petitioner was competent to stand trial (Docket No. 6, Ex. 1), which finding is presumed to be correct. 18 U.S.C. § 2254(e)(1).

-7-

Petitioner next alleges that his attorney spoke with his family and friends to have them persuade him to accept Respondent's plea offer. This claim fails for at least two reasons. First, the transcript of Petitioner's plea actually shows that he arrived in court intending to reject the offer, but changed his mind in the middle of the proceedings. This was a decision independent of any contemporaneous persuasion by anyone. (Docket No. 6., Ex. 8 at 2, 8.) Second, Petitioner has produced no case law, and the Court is aware of none, indicating that it is improper for an attorney to have a defendant's friends or family persuade him to accept a plea offer where it is the attorney's opinion that the offer should be accepted.

Finally, Petitioner alleges that his attorney did not inform him of the elements of second-degree murder before allowing him to plead to that charge. Again, this is contrary to his sworn statements during his change of plea (id. at 11-12) and he has not provided sufficient evidence to allow the Court to disregard those statements. Moreover, he has not shown why, even if those elements were not properly explained, he would not have pled guilty if they had been explained to him. At the time of his plea, Petitioner was facing first-degree murder charges, as well as numerous other charges. If convicted at trial, he would have received either the death penalty or life without parole, plus up to approximately 3500 months of imprisonment. (Id. at 8.) Instead, he accepted a plea bargain that resulted in a sentence of 267 to 330 months of imprisonment and that allowed for the possibility of a sentence as

-8-

short as 169 months of imprisonment. (<u>Id.</u> at 4.) Petitioner has not explained why he or any other rational person in his situation would have chosen to go to trial rather than accept the plea bargain. Therefore, he can demonstrate neither error nor prejudice as to any of his ineffective assistance claims.

In addition to his ineffective assistance claim, Petitioner also makes the statement that the judge accepting his plea and the assistant district attorney handling the hearing knew he was incompetent to enter a guilty plea because he told them in court that he was taking Doxepin. Even though the transcript does make clear that he informed those present that he was taking Doxepin, as already set out, his words and actions at the time actually indicated that he was competent to enter a guilty plea. He has shown nothing to call that into question. Therefore, this claim also fails.

In the end, Petitioner's evidentiary showing falls far short of what would be necessary to demonstrate that the state court's decision in denying his claims was contrary to or involved an unreasonable application of clearly established federal law as set out by the United States Supreme Court or that the state court decision was based on an unreasonable determination of the facts. To the contrary, the applicable law and the record before the Court strongly support the state court's decision. The habeas petition will be denied.

**IT IS THEREFORE ORDERED** that Respondent's motion for summary judgment (Docket No. 5) is granted, that the habeas petition (Docket No. 2) is denied, and that this action is dismissed.


_____
**United States Magistrate Judge**


July 25, 2008